**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MALIK TERRELL,<br><br>Defendant. | Criminal Action No. 23-292-6 (CKK) |

**MEMORANDUM OPINION**
(December 11, 2023)

Defendant Malik Terrell is charged by indictment, with other individuals, with carjacking and kidnapping two victims ("Victim-1" and "Victim-2," collectively, the "Victims") on June 9, 2023.  On August 31, 2023, Magistrate Judge Zia M. Faruqui of this jurisdiction ordered Defendant to be temporarily detained without bond.  On September 8, 2023, Magistrate Judge Faruqui held a detention hearing for Defendant and granted the Government's oral motion to detain Defendant pending trial.  *See* Order of Detention Pending Trial ("Detention Order"), ECF No. 20.

Before the Court is Defendant's [39] Motion for Review of Detention Order and to Set Conditions of Release.  Defendant requests that the Court review the Detention Order and set conditions of release.  Upon consideration of the pleadings,[1] the relevant legal authority, and the record before the Court, the Court shall **DENY** Defendant's [39] Motion for Review of Detention Order and to Set Conditions of Release.

---

[1] The Court's consideration has focused on:
- Defendant's Motion for Review of Detention Order, ECF No. 39 ("Motion" or "Mot."); and
- The Government's Opposition to Defendant's Motion for Review of Detention Order, ECF No. 55 ("Gov't's Opp'n") and exhibits therein.

# I.   BACKGROUND

## A.  Procedural Background

On August 25, 2023, the Government filed an indictment against Defendants Desmond Evans, Ramel Henderson, Kevon Jackson, Delonte Mundaray, Marquette Jackson, Malik Terrell, and Melvin Green.  ECF No. 1 (sealed).  The indictment charged six of these defendants, including Defendant Terrell, with Count One, Kidnapping and Aiding and Abetting, in violation of 18 U.S.C. §§ 1201(a)(1) and 2 (for kidnapping Victim-1); Count Two, Kidnapping and Aiding and Abetting, in violation of 18 U.S.C. §§ 1201(a)(1) and 2 (for kidnapping Victim-2); and Count Three, Carjacking and Aiding and Abetting, in violation of 18 U.S.C. §§ 2119(1) and (2) (for carjacking a vehicle used by Victim-1).  *See id.*  On November 3, 2023, an additional defendant was indicted, and additional firearm-related charges were included for certain defendants.  ECF No. 43 (sealed).  With respect to Defendant Terrell, the superseding indictment charged Defendant with Count Eight, Unlawful Possession of a Firearm (Prior Conviction), in violation of 22 D.C. Code § 4503(a)(1) (2001 ed.).  *See id.*  Following the August 2023 indictment, Magistrate Judge G. Michael Harvey of this jurisdiction issued an arrest warrant for Defendant, which was executed on August 31, 2023.  ECF No. 9.  That same day, Defendant appeared before Magistrate Judge Faruqui, who granted the Government's oral motion for temporary detention (for three days) and held Defendant without bond.  *See* Aug. 31, 2023 Minute Entry.  On September 8, 2023, Defendant appeared for a detention hearing before Magistrate Judge Faruqui, who granted the Government's oral motion to detain Defendant pending trial.  *See* Sept. 8, 2023 Minute Entry.

Defendant subsequently filed the pending motion on November 2, 2023, requesting this Court to review his bond status and set conditions of release.  *See generally* Mot.  The Government opposes Defendant's motion, filing its opposition on November 20, 2023.  *See generally* Gov't's

Opp'n.

### B. Factual Allegations

In its opposition, the Government details the allegations against Defendant, appending images extracted from video surveillance footage that depict Defendant before and during the charged offenses, as well as information regarding the evidence recovered during searches conducted by law enforcement in August 2023. *See generally id.* Broadly, the Government alleges that Defendant, with other subjects, "actively committed an armed carjacking and kidnaping of two unsuspecting victims . . . on June 9, 2023," in an "apparent attempt to steal clothing, money, Victim-1's vehicle, and other items." *Id.* at 1–2. The Government also alleges that Defendant was in possession of a "loaded firearm" at the time of his arrest, despite having been previously convicted of a crime punishable by imprisonment for a term exceeding one year. *Id.* at 6.

To support its claims, the Government recounts the video surveillance footage that purportedly depicts the defendants' conduct before, during, and after the offenses. According to the Government, this footage shows the Victims arriving in a black Mercedes SUV in the 4400 block of F Street SE, Washington, D.C., at approximately 11:33 p.m. on June 8, 2023. *Id.* at 11. At approximately 11:44 p.m., a large group of individuals, including the Victims, departed from the area in multiple vehicles. *Id.* On June 9, 2023, at approximately 12:09 a.m., the video footage shows the Victims and many of the defendants in this case, including Defendant Terrell, enter Saint Yves, a club located at 1220 Connecticut Avenue NW, Washington, D.C. *Id.* Saint Yves is approximately eight (8) miles from the 4400 block of F Street SE. *Id.* Then, at approximately 1:56 a.m., a group of individuals, including the Victims and multiple "subjects," exit Saint Yves before entering various vehicles and departing the area at approximately 1:59 a.m. *Id.*

In its opposition, the Government appends still images extracted from video surveillance

footage to corroborate its claims.   The first depicts Defendant right outside Saint Yves at approximately 12:11 a.m. on June 9, 2023.  *Id.* at 11–12.  The second depicts Defendant at 4400 block of F Street SE, at approximately 3:46 a.m. that same night.  *Id.* at 12.

 

*Saint Yves Outdoor Camera*
*June 9, 2023 at 12:11:01 a.m.*

*4431 F Street SE Camera*
*June 9, 2023 at 3:46:25 a.m.*

*See id.* at 12.  The Government then alleges that, at approximately 3:43 a.m., multiple "subjects" are visible on video surveillance footage "committing an armed robbery, carjacking, and kidnapping of [the Victims] as the Victims approached the black Mercedes SUV in the 4400 block of F Street SE area."  *Id.*  According to the Government, Defendant committed the following actions between 3:45 a.m. and 3:48 a.m.: (1) Defendant ran to the Mercedes SUV as Victim-1 is outside of the vehicle "being controlled by the group of subjects"; (2) Defendant interacted "with a group of subjects at the rear, driver-side door" of the SUV; (3) Defendant approached the driver-side door of the SUV and picked up a bag located underneath it; (4) Defendant walked to the rear of the SUV before returning to the corner of 4431 F Street; (5) Defendant is "seen smiling and talking with an unknown witness," before looking into the bag he picked up and subsequently "tossing the bag into the refuse area"; (6) Defendant is seen running back toward the SUV while

the other individuals are either in the vehicle or moving around it; (7) Defendant opens the rear, driver-side door of the SUV and enters the doorway of the vehicle before closing that same door approximately twelve (12) seconds later; (8) Defendant is seen with what appears to be keys, and enters the driver's door of a white Nissan Altima that was already parked in the vicinity; and (9) Defendant then drives in the opposite direction as the SUV containing the Victims. *Id.* at 12–13.



*4431 F Street SE Camera*
*June 9, 2023 at 3:46:25 a.m.*



*4431 F Street SE Camera June 9, 2023 at 3:45:44 a.m.*

*See id.* at 21.  The Government claims that during this time a struggle ensued between Victim-1 and the subjects while the latter group "attempted to kidnap Victim-1, remove his clothing, and force him into the rear passenger area of the Mercedes SUV." *Id.* at 9.  Similarly, Victim-2 was

5

"stripped at gunpoint" and forced into the rear tailgate area of the Mercedes SUV. *Id.* At approximately 4:39 a.m., the Mercedes SUV and Nissan Altima are seen on video surveillance footage entering an apartment complex in Suitland, Maryland. *Id.* The footage shows at least five individuals exiting those vehicles and moving toward an apartment that was subsequently burglarized, which law enforcement later determined was associated with Victim-1. *Id.* Then, at approximately 5:39 a.m., the Mercedes SUV is seen on video surveillance footage in front of Victim-1's apartment building in Waldorf, Maryland. *Id.* At least four subjects are seen in footage exiting the SUV at "various times to aid in an armed robbery of [the] apartment." *Id.* at 9–10. During this time, Victim-3—the romantic partner of Victim-1—was robbed at gunpoint. *Id.* at 10. Four minutes later, at approximately 5:43 a.m., video surveillance footage shows at least three subjects "engag[ed] in a shootout with Victim-1," in which Victim-1 and Marquise Jackson, the twin brother of co-Defendant Jackson, are both "struck" and subsequently pronounced deceased after the "shootout." *Id.* At 6:45 a.m., the Nissan Altima is seen on video surveillance footage at the intersection of Kayak Avenue and Emo Street in Capitol Heights, Maryland, "just prior to the arrival" of first responders at 819 Kayak Street, where the Mercedes SUV was found to be on fire. *Id.* Finally, at approximately 8:02 a.m., the Metropolitan Police Department ("MPD") responded to the area of 4517 C Street SE, Washington, D.C., and, upon arrival, made contact with Victim-2, who was "naked except for one sock." *Id.* Victim-2 informed the officers that he was robbed of his clothing and shoes but managed to escape his captors, though with multiple lacerations across his body. *Id.* Victim-2 later informed officers that his captors "violently pistol-whipped [the] Victims," and demanded addresses from Victim-1. *Id.*

Lastly, the Government explains that the investigation following the offenses indicated that the defendants and others who participated in the offenses are "close personal associates." *Id.* at

13; *id.* (explaining that connection was made after analyzing the toll and cell phone location records, physical observations, social media records, and video captured by cameras). Accordingly, on August 31, 2023, law enforcement executed searches of twelve (12) premises and one (1) vehicle associated with the defendants and their associates in the District of Columbia and Maryland. *Id.* at 14. The searches resulted in law enforcement seizing numerous items, including but not limited to thirteen (13) firearms, firearm magazines and ammunition, clothing matching the description of items worn by various defendants and their associates during the offenses, and digital devices. *Id.* With respect to Defendant Terrell, law enforcement located and arrested him and a co-defendant at 4425 F Street NE, Washington, D.C. *Id.* at 15. The Government proffers that Defendant primarily resides at three addresses, including the aforementioned address. *Id.* At that location, law enforcement recovered various items, including but not limited to: a loaded Glock 45 9mm firearm, which was located in a bedroom that contained other personal belongings of Defendant; a loaded Glock 43 9mm firearm, which another resident claimed ownership of; a loaded Glock 19 9mm firearm, which was recovered from a couch that another resident claimed ownership of; ammunition; two pairs of Cartier sunglasses; white New Balance sneakers, which matched the style of sneakers worn by Defendant on the night of June 8, 2023; Louis Vuitton Sneakers, which matched the style of sneakers worn by Victim-1 on the night of June 8, 2023; and paperwork for Defendant. *Id.* Law enforcement also conducted a search at 3936 Suitland Road, Suitland-Silver Hill, Maryland, which is believed to be another one of Defendant's residences. *Id.* at 17. There, law enforcement recovered various items, including but not limited to a black hooded "Paper Soldier" sweatshirt, which matches the description of a sweatshirt worn by another co-defendant the night of June 8, 2023. *Id.* at 17–18.

## II.   LEGAL STANDARD

A defendant ordered detained by a magistrate judge may file "a motion for revocation or amendment of the order" with "the court having original jurisdiction over the offense." 18 U.S.C. § 3145(b).  The Court applies *de novo* review to the question and is "free to use in its analysis any evidence or reasons relied on by the magistrate judge, but it may also hear additional evidence and rely on its own reasons." *United States v. Sheffield*, 799 F. Supp. 2d 18, 20 (D.D.C. 2011) (BAH) (quoting *United States v. Hanson*, 613 F. Supp. 2d 85, 88 (D.D.C. 2009) (PLF)). "The motion shall be determined promptly."  18 U.S.C. § 3145(b).

In our society, "liberty is the norm" and "detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987).  The Bail Reform Act permits pretrial detention in only "carefully defined circumstances."  *United States v. Simpkins*, 826 F.2d 94, 95–96 (D.C. Cir. 1987).  A detention hearing must be held only if a case involves any of an enumerated set of offenses, including a "crime of violence" or a felony that involves the use of a dangerous weapon, 18 U.S.C. § 3142(f)(1)(A), or if the defendant poses a serious risk of flight or of trying to obstruct justice or threaten, injure, or intimidate a witness or juror, *id.* § 3142(f)(2)(A)–(B).

The question for the Court is whether any "condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." *Id.* § 3142(e)(1).  "In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'" *United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019).  In determining whether a defendant should be detained pending trial, the Court must consider "the available information" concerning four enumerated factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence

against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.  18 U.S.C. § 3142(g).

"To justify detention on the basis of dangerousness, the government must prove by 'clear and convincing evidence' that 'no condition or combination of conditions will reasonably assure the safety of any other person and the community.'"  *United States v. Munchel*, 991 F.3d 1273, 1279–80 (D.C. Cir. 2021) (quoting 18 U.S.C. § 3142(f)).  That standard requires the Government to establish that the defendant "poses a concrete, prospective threat to public safety" that cannot be sufficiently mitigated by release conditions.  *Id.* at 1280; *see also Salerno*, 481 U.S. at 751 (requiring the Government to "prove[ ] by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community").  "Detention cannot be based on a finding that defendant is unlikely to comply with conditions of release absent the requisite finding of dangerousness or risk of flight; otherwise[,] the scope of detention would extend beyond the limits set by Congress."  *Munchel*, 991 F.3d at 1283.

## III.    DISCUSSION

The Court concludes that the evidence presented by the Government in its briefing clearly requires Defendant Terrell's detention pending trial.

### A.  Legal Principles

As a threshold matter, the Court must address the proper standard to apply at this stage of proceedings.  As explained above, Defendant has appealed the Detention Order pursuant to 18 U.S.C. § 3145(b).  Such an appeal is subject to *de novo* review, in which the Court must engage in a searching, "factbound inquiry" to determine danger to the community and/or risk of flight.

*United States v. Sabol*, 534 F. Supp. 3d 58, 69 (D.D.C. 2021) (EGS) (citing *Munchel*, 991 F.3d at 1283) (cleaned up).

In determining whether Defendant is a danger to the community or a flight risk, the Court considers the Section 3142(g) factors including: (1) "the nature and circumstances of the offense charged"; (2) "the weight of the evidence"; (3) "the history and characteristics" of the defendant; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release."  18 U.S.C. § 3142(g).

The Court shall consider these factors based upon the present record without holding an additional hearing.  *See Sheffield*, 799 F. Supp. 2d at 20 (permitting district court to use in its analysis the evidence relied on by the magistrate judge); *see also United States v. Anderson*, 384 F. Supp. 2d 32, 33–34 (D.D.C. 2005) (PLF) (taking into consideration the indictment, "the briefs and other papers submitted by the parties, the proceedings before [the magistrate judge], the [magistrate's] findings of fact and conclusions of law, and the evidence and proffers before [the court]").  Based on the current record, the Court concludes that clear and convincing evidence supports a finding that no condition or combination of conditions will "reasonably assure" the "safety of any other person and the community" or flight in advance of trial.  18 U.S.C. § 3142(e)(1).  Accordingly, the Court orders that Defendant shall remain detained pending trial. *See id.*

### B.  Nature and Circumstances of the Offense Charged

Turning to the Section 3142(g) factors, the Court first considers the "nature and circumstances of the offense charged" including whether the offense is a "crime of violence" or involved a firearm.  18 U.S.C. § 3142(g)(1).  Under the Bail Reform Act, a "crime of violence" includes "an offense that has as an element of the offense the use, attempted use, or threatened use

of physical force against the person or property of another," and "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property or another may be used in the course of committing the offense." *Id.* § 3156(a)(4)(A)–(B).

Here, Counts One through Three are crimes of violence. Specifically, Defendant has been charged, by indictment, with kidnapping and aiding and abetting the Victims (Counts One and Two), as well as carjacking and aiding and abetting Victim-1's vehicle (Count Three). ECF No. 43. Count Three requires a defendant to have, "with the intent to cause death or serious bodily harm," taken a vehicle "from the person or presence of another by force and violence or by intimidation, or attempts to do so[.]" 18 U.S.C. § 2119. Similarly, Counts One and Two require a defendant to have, in part, "unlawfully seize[d], confine[d], inveigle[d], decoy[ed], kidnap[ped], abduct[ed], or carrie[d] away and holds for ransom or reward or otherwise any person[.]" *Id.* § 1201(a). The alleged offenses are clearly crimes of violence. *See, e.g.*, *United States v. Krol*, 642 F. Supp. 3d 28, 36 (D.D.C. 2022) (RC) (concluding defendant qualifies for pretrial detention as he was charged with "assaulting, resisting, or impeding certain officers using a dangerous weapon"); *United States v. Mercedes*, 254 F.3d 433, 437 (2d Cir. 2001) (noting the nature of the crime—conspiracy to commit armed robbery of a drug-dealer—weighs heavily against release); *United States v. Franklin*, 2022 WL 16695209, at *3 (N.D. Ohio Nov. 3, 2022) (concluding the "violent and brazen nature and circumstances of [the defendant's] charged crimes weigh strongly in favor of detention" as he and his co-defendants "allegedly engaged in a one-day carjacking spree involving intentional car crashes and firearms in broad daylight").

The offenses charged are serious crimes involving Defendant's clear intent to, along with others, kidnap the Victims at gunpoint, take Victim-1's vehicle, and subsequently travel across state lines (from the District of Columbia to Maryland) to burglarize residences associated with

Victim-1.  Gov't's Opp'n at 7–10.  Multiple images depict Defendant at the scene of the initial crime (at 4400 block of F Street SE), before video surveillance footage allegedly shows him driving the Nissan Altima to Suitland, Maryland (where one residence was burglarized) and then to Capitol Heights, Maryland (where the Mercedes SUV was on fire).  *Id.* at 9–10, 20–21.

Moreover, the charged offenses carry significant potential penalties for Defendant.  If convicted of Count One or Two, Defendant would face a minimum sentencing guidelines range of at least 121 months to 151 months of imprisonment (i.e., approximately ten to twelve years), and a statutory maximum of life imprisonment.  *Id.* at 3.  Accordingly, the nature and circumstances of the crimes charged, as well as the heavy sentence to which Defendant is subject if convicted, militate heavily against pretrial release.

### C.  Weight of the Evidence

The weight of the evidence against Defendant also favors continued pretrial detention.  The Government presents multiple images extracted from video surveillance footage depicting Defendant and others committing an armed kidnapping of the Victims and carjacking of one vehicle.  *Id.* at 12, 20–21.  In addition, law enforcement identified a social media account used by Defendant.  *Id.* at 19.  Images extracted from that account depict Defendant, on June 5, 2023, wearing the same sweatshirt and similar sunglasses as seen on Defendant at Saint Yves and throughout the offenses on June 9, 2023.  *Id.* at 19–20.  And, the investigation following June 9, 2023 revealed connections between Defendant's alleged telephone number and telephone numbers allegedly used by Defendants Henderson, Jackson, Mundaray, and Green.  *Id.* at 22.  Notably, Defendant does not seriously contest the weight of the evidence against him.  *See generally* Mot. In fact, Defendant fails to provide any evidence that he did not commit the charged offenses.  *Id.*

Given the evidence to date, including multiple images of Defendant at the scene of the

crime, this factor weighs in favor of detention.  *See United States v. Brockhoff*, 590 F. Supp. 3d

295, 304 (D.D.C. 2022) (CKK).

### D.  History and Characteristics of the Defendant

Under the third Section 3142(g) factor, the Court must consider a defendant's "history and

characteristics," including his "character, physical and mental condition, family ties, employment,

financial resources, length of residence in the community, community ties, past conduct, history

related to drug or alcohol abuse, criminal history, and record concerning appearance at court

proceedings." 18 U.S.C. § 3142(g)(3).  Defendant does appear to have family and community ties

in the area.  *See* Mot. at 3 (stating Defendant was born and raised in the District of Columbia).  His

grandmother and aunt also both live in the area.  *Id.*

However, according to the Government, Defendant's criminal history demonstrates his

proclivity to possess firearms.  *See* Gov't Opp'n at 22.  In April 2020, Defendant was found with

a gun in his jacket pocket.  *Id.*  In May 2021, Defendant was arrested in the District of Columbia

for carrying a firearm without a license.  *Id.*  That same month, Defendant was arrested after fleeing

from the police in a stolen vehicle, which crashed during his flight.  *Id.*  Then, in November 2022,

Defendant was again arrested for possession of a firearm, during which time law enforcement

recovered a "loaded Glock 48, 9mm caliber firearm" on his person.  *Id.*  While the Government

concedes that Defendant has only been previously convicted of one firearms offense (the May

2021 incident), the Government maintains that his previous arrests "indicate that he is willing and

able to easily obtain illegal firearms."  *Id.*

The Government's claims are corroborated by the items law enforcement recovered during

the searches conducted in August 2023.  At 4425 F Street SE, where Defendant was arrested, law

enforcement recovered loaded firearms, including: a Glock 45 9mm firearm (located in a bedroom

containing Defendant's personal belongings); a Glock 19 9mm firearm (located in the couch where Defendant was resting on, though another resident claimed ownership of it); and a Glock 43 9mm firearm that Defendant's proposed third-party custodian claimed ownership of. *Id.* at 22–23.

In all, given Defendant's criminal history and apparent ability to access firearms with ease, the Court finds that this factor weighs in favor of detention.

### E.  The Nature and Seriousness of the Danger Posed by Defendant's Release

The final factor that the Court must consider is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."  18 U.S.C. § 3142(g)(4).

Defendant maintains that "he is not a threat to anyone," and that his proposed conditions of release would "reasonably assure the safety of any other person and the community."  Mot. at 3–4.  Specifically, Defendant proposes that he be released on the condition that he resides with his aunt in the District of Columbia.  *Id.*  Defendant further consents to GPS monitoring and 24-hour home confinement.  *Id.* at 3–4.  However, Defendant's proposed third-party custodian—his aunt— appears to be unavailable for a significant part of the day, as she works outside the home from 9:30 a.m. to 2:30 p.m.  *Id.* at 3.  The Government also proffers that it is this aunt who claimed ownership of one of the firearms recovered during the August 2023 search.  Gov't's Opp'n at 23.

In addition, the Government has provided strong evidence that not only did Defendant intentionally and forcibly participate in the kidnapping of the Victims and the carjacking of the Mercedes SUV—in clear disregard for the safety others—Defendant also has access to multiple firearms, including possibly at his proposed third-party custodian's residence.  *See generally* Gov't's Opp'n.  And, the significant statutory penalties Defendant faces provide him with a strong

incentive to flee.  Overall, the Court's concern regarding the safety of the community is not alleviated.  Therefore, this factor also weighs in favor of detention.

*       *       *

All in all, the Court finds that no set of conditions can address the threat of danger Defendant poses to the community in the District of Columbia or mitigate his risk of flight.  Here, the Government has shown that Defendant has a strong incentive to flee given the seriousness of the charges, the apparent weight of the evidence, and the substantial statutory penalties he is facing. Therefore, the Court concludes that the Section 3142 factors require pretrial detention.

## IV.     CONCLUSION

The record as a whole establishes, by clear and convincing evidence, that no condition or combination of conditions can be imposed that would reasonably assure the safety of the community or Defendant's presence at trial if he was released pending trial.  18 U.S.C. § 3142(e)(1).  As such, the Court **DENIES** Defendant's [39] Motion for Review of Detention Order and to Set Conditions of Release.  An appropriate order accompanies this memorandum opinion.

**Dated:** December 11, 2023

　　　　　　　　　　　　　　　　　　  /s/  
COLLEEN KOLLAR-KOTELLY  
United States District Judge